ISAAC ROSENFIELD v. JOSEPH M. FORTIER.

*Contract—Sale on commission—Estoppel.*

1. Where a traveling salesman is entitled to receive the excess on sales above the list price of the goods, the consent of his employer to his making sales at less than the list price will not imply an agreement to pay him the discount thus made to effect a sale.

2. A claim made by the salesman for credit for such discount, on reporting the sales, will not affect the right of the employer to fill the orders at the reduced price, and thus secure the benefit of the trade, he allowing the salesman the agreed commission for making them.

Error to Wayne. (Hosmer, J.) Submitted on briefs October 7, 1892. Decided December 22, 1892.

*Assumpsit.* Plaintiff brings error. Reversed on original hearing, and affirmed on a rehearing. The facts are stated in the opinions.

*Adam E. Bloom,* for appellant.

*Cowles & Jerome,* for defendant.

MONTGOMERY, J. Plaintiff brought suit to recover for commissions earned in selling tobacco for the defendant. The circuit judge directed a verdict for the defendant, and the plaintiff brings error.

The defendant is a dealer in tobacco, having his place of business at Montreal, and plaintiff is a traveling salesman, and was engaged in that business in 1889, carrying samples in different lines. In May, 1889, he called upon defendant, and had some conversation with him, whereupon defendant addressed the following letter to him:

"MONTREAL, May 28, 1889.
"MR. ROSENFIELD, Care Balmoral Hotel, City.
"*Dear Sir:* Herewith I send you the following samples, care of above address, viz.: [mentioning samples, with price of each, and number of bales of each on hand]. Hoping you will find them O. K., I remain,
"Yours, etc.,          J. M. FORTIER.
"Commission to be paid when the goods are paid for. Commission as follows: 1 per cent. on all sales accepted by me, and whatever above these prices are yours. Terms, four months.          J. M. F."

On the trial the plaintiff testified that this letter truly stated the agreement between the parties, and was the

contract under which he operated. Later in the case the plaintiff testified that in July, 1889, he met defendant in New York, and that defendant then told him to receive the best offers that he could get, " 'and send in the orders, and if I can possibly fill them I will do so, and if I do not fill them I shall always notify you.' He told me to sell goods at any price that I could get offered,—to accept the offer subject to his approval." The plaintiff subsequently testified that a further contract was entered into between him and Mr. Fortier in May, 1889, which was a long typewritten contract, but which was not produced on the trial, and the court excluded the oral testimony of its contents, to which ruling of the court there is no exception nor just ground for complaint.

The first sale was June 7, 1889, to John B. Heil, a quantity of tobacco at 75 cents; and in sending in this order plaintiff stated: " Please credit me on this, when paid, 10 cents per pound." This tobacco was listed at 75 cents. He made claim, however, that he was authorized by a telegram from Mr. Fortier to cut the price to 65 cents to make the sale. The telegram was not produced, but, assuming that the proof was competent upon this point, it would not follow that he was entitled to charge the excess of price over 65 cents. Under the written agreement the plaintiff was entitled to charge the excess of price over the list price named only, and the consent by the defendant that he sell at less than the list price would not imply an agreement to pay the difference between the list price and the discount price which defendant was willing to make to the trade. Other similar sales were made, accompanied by requests to be credited with discounts, when sales were made at or below the list price. The plaintiff's claim as to these transactions is that the defendant is estopped, having filled the orders after receipt of these requests, from disputing plaintiff's claim to com-

missions.    There is no element of an estoppel present.
Under the agreement it was the plaintiff's duty to sell the
tobacco at the best price that could be obtained, and the
fact that he put forth claims for compensation in excess of
the price agreed upon could not debar the defendant from
the right to fill the orders, and get the benefit of the
trade, allowing plaintiff the agreed price for sales.

The plaintiff also made a claim for commissions on sales
made by the defendant direct to dealers in the United
States, claiming that the agreement between him and
defendant entitled him to commissions on all such sales;
but, according to his own testimony, whatever agreement
was in existence between him and defendant—whether we
accept the first statement that the letter addressed care of
Balmoral Hotel was the contract, or that there was a type-
written contract—was in writing.    The terms of this con-
tract were not before the court by any competent testimony,
and the court therefore committed no error in disallowing
this testimony.

Another item of plaintiff stands on a different ground.
This is the charge for commissions and overprice on 27
bales of Sumatra, sold to Benjamin Labe.    It appears that
June 17 the defendant made out a new price list, which
was furnished to the plaintiff, which price list included 50
bales of B. B. 2 Sumatra, listed at 50 cents.    The plaint-
iff sold Labe 2 sample bales, 1 of which was out of the
50-bale lot listed, at 55.    September 30 defendant wrote
Rosenfield:

"I am also in receipt of a letter this morning from Mr.
B. Labe, offering me 50 cents for Bedoga A. 2, 13 bales,
and 15 bales of B. B. 2, which he states is what you
offered him.    Now, you know I cannot sell A. 2 at 50
cents and make any money, but I telegraph him to-day
that there are only 10 bales of A. 2 and 17 bales of B. B.,
and I will let him have the 27 bales at 50 cents net cash.
So I wired you to-day that I could only give you 1 per

cent. on the whole sale, and 1 cent per pound on the 17 bales B. B. 2 only. If this is satisfactory to you, I will ship it; if not, I cannot do so."

On October 3 defendant wrote plaintiff:

"Re Benj. Labe, I telegraphed him same day as I wired you,—the 30th Sept.,—telling him I had only ten bales of A. 2 and 17 bales of. B. B. 2, and asking him if I might ship them; but have not yet been favored with a reply, and cannot ship till I get one. If I do ship the order, I can only allow you 1 per cent. commission on the whole lot, and 1 cent per lb on 17 bales only."

On December 26 defendant furnished a statement to plaintiff, in which he credited on account of the sale to B. Labe a commission of $23.58, and 1 cent per pound on 17 bales, $29.83. As payment had not yet been received from Mr. Labe and Gray, Morales & Co., another customer, the amounts credited for sales to them were deducted, and a check sent for the balance. On February 19, 1890, the defendant wrote to plaintiff, "Gray, Morales & Co. have not yet settled. B. Labe has, but made a reduction of $247.15." It does not appear upon what ground the deduction by B. Labe was made. On May 12, 1890, a statement was rendered in which plaintiff was credited with the 1 per cent. commission only on the sale to Labe, —$23.58,—but was not credited with the 1 cent per pound which had been credited in previous statements,— $29.83. Plaintiff claimed that he was entitled to 5 cents per pound on this sale, but, in view of the conditions upon which defendant made the shipment, the credit of 1 cent per pound is all that he was entitled to; but he was not credited with this in any settlement, and, so far as the record shows, has not been paid this $29.83. It does not appear that the reduction made on the sale to Labe was owing to any fault of the plaintiff, and his charge for the services in making the sale could not be defeated by any

94 Mich.—3.

arrangement between defendant and Labe, unless the reduction was made on account of misstatements made by the plaintiff, and of this there is no proof in the record. It was error, therefore, to instruct the verdict for the defendant, unless there was a settlement which concluded the plaintiff.

On the 21st of June, 1890, defendant inclosed a check for $40.81, which was the amount remaining unpaid, exclusive of the 1 cent per pound on 17 bales, and wrote plaintiff:

"I beg to inclose you check for $40.81, as per statement rendered you on May 12, being in full settlement of all commissions, etc., due you."

Plaintiff testified that he accepted this check under protest. It appears that he at once wrote the defendant, for on July 4 defendant replied as follows:

"Your favor of the 25th June at hand, and contents noted. In reply, I beg to say the check for $40.81 sent you is in full of all commissions due you to date, as per statement sent you."

We think, under this evidence, it was a question for the jury whether there had been an account stated between the parties. See *Mortlock v. Williams,* 76 Mich. 568; *Turnbull v. Boggs,* 78 Id. 158.

For the error pointed out the judgment must he reversed, and a new trial ordered.

The other Justices concurred.

---

A rehearing was granted upon the application of defendant, and the case reargued February 7, 1893. Upon March 10, 1893, the following opinion was filed:

MONTGOMERY, J. A rehearing has been ordered in this case, and a reargument had.

The only item which it is found by our former opinion the plaintiff had offered sufficient proof of to justify submitting the case to the jury was a charge of commissions and overprice on 17 bales of tobacco sold to Benjamin Labe at some date after October 3, 1889. The opinion was written with the understanding that this was a part of the 27 bales described in the item of plaintiff's bill of particulars under date of July 25, 1890. A re-examination of the case has satisfied us that we were mistaken in this, and that this item was not the one, nor was it included in the 27-bale item, and was not included in the plaintiff's bill of particulars. This conclusion necessarily leads to a different result.

The judgment of the court below will stand affirmed, with costs.

McGRATH, LONG, and GRANT, JJ., concurred. HOOKER, C. J., took no part in the decision.